**Larry ADAMS, Petitioner**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 3, 2012.

Decided Aug. 31, 2012.

Larry Adams, pro se.

Bryan M. Schwartz, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McGINLEY.

Larry Adams (Adams) challenges the order of the Office of Open Records (OOR) that denied Adams's appeal from the decision of the Pennsylvania State Police (Police) which denied Adams's request to gain access to Police policy regarding the use of

confidential informants and granted his request for records concerning the training required for a state trooper.

On September 26, 2011, the Police received Adams's request for information in which he sought the following:

1. A copy of any and all training material that an Investigational State Trooper receives on the use of Confidential Informants.

2. If not included in the above, The State Police Policy regarding the reliability of an informant and when is he deemed unreliable and/or when he should not be allowed to continue to be an [sic] Confidential Informant.

3. If not included in the above, The actual contract that an individual must sign which obligates them to a certain standard of conduct as a Confidential Informant.

4. Any Departmental rules, regulations or written procedures governing the conduct for removal of an individual from being a Confidential Informant and his removal from being a Confidential Informant.

Request from Larry Adams, September 22, 2011, at 1.

By letter dated October 31, 2011, the Pennsylvania State Police Bureau of Records & Identification Right–to–Know Office (Office) granted Adams's request with respect to the training of state troopers and denied the request with respect to confidential informants. Susan J. Fleming (Fleming), Deputy Agency Open Records Officer for the Office, denied the request for the following reasons: 1) the requested record came under the exemption in Section 708(b)(16)(vi)(A) of the Right–to–Know Law (Law),[1] 65 P.S. § 67.708(b)(16)(vi)(A), because it would reveal the institution, progress, and result of a criminal investigation; 2) the disclosure of the record would hinder the Police's ability to secure an arrest, prosecution, or conviction, or would endanger the life or physical safety of an individual and was exempt under Section 708(b)(16)(vi)(D) and (E) of the Law, 65 P.S. § 67.708(b)(16)(vi)(D) and (E); 3) the requested record came under the personal security exemption of Section 708(b)(1)(ii) of the Law, 65 P.S. § 67.708(b)(1)(ii); and 4) the record, if disclosed, would be reasonably likely to jeopardize public safety or preparedness under Section 708(b)(2) of the Law, 65 P.S. § 67.708(b)(2).

Adams appealed to the OOR. The Police reiterated the reasons why the request was denied. The Police submitted the affidavit of Fleming which stated the reasons why the records were initially denied. She identified the records as "Informants and Sources of Information, Administrative Regulation 9–9" and "Operations Memorandum 7–2 Informant History Report."[2]

Following a request for clarification, the Police also submitted the affidavit of Captain Andrew Ashmar, Bureau of Criminal Investigation for the Police, who stated:

6. Much of my law enforcement experience has involved the investigation of crime and criminal organizations, and as a consequence I have developed an expertise in the area of confidential informants, both for the process of how they are used and for their necessity in our law enforcement operations. Confiden-

---

1. Act of February 14, 2008, P.L. 6.

2. The Police also submitted an affidavit of Trooper Patrick A. Beaver (Trooper Beaver), Bureau of Research and Development for the Police. Trooper Beaver recommended that the records be withheld from disclosure because they were exempt under the sections of the Law asserted by Fleming.

tial informants are vital to many of our most complex investigations.

7. Sometimes the effect of disclosing seemingly innocuous PSP [Police] regulations is not easily apparent, either to lay persons or police officers. Similarly, it can be difficult for those same entities to discern and appreciate the wherewithal, resourcefulness, and passion of criminals to systematically acquire and analyze information to achieve a criminal objective. The information contained in the withheld records, if made public, would provide a puzzle piece for those individuals and help them succeed with their malevolent motives.

8. Disclosing the information within the withheld records would jeopardize our use of confidential informants for all investigations. If this information is placed into the public domain, it would prevent confidential informants from coming forward and substantially alter our criminal investigation process. Confidential informants are irreplaceable in many of our current intelligence investigations, have been in the past, and will continue to be so in the future.

9. Based on information developed through ongoing PSP criminal intelligence investigations, there is a strong movement in the public to discourage confidential informants from coming forward. There are currently websites published that are dedicated to outing confidential informants. Providing more information into the public domain to those who are already attempting to undermine our investigative efforts would further inhibit our ability to function in an investigative capacity and decrease the willingness of a confidential informant to come forward.

10. Therefore, the withheld records, PSP Administrative Regulation 9–9, Informants and Sources of Information,

and PSP Operations Manual 7–2, Chapter 43, Informant History Report, contain information that would have a substantial negative impact on the progress of any PSP investigation that either involves or potentially involves confidential informants, would jeopardize the personal safety of many individuals, hinder the PSP's ability to secure arrests, prosecutions, and convictions, and would create a threat to public safety.

11. Accordingly, I recommended that the responsive records be withheld from disclosure.

Affidavit of Captain Andrew Ashmar, November 21, 2011, Paragraph Nos. 6–11 at 2–3.

On December 1, 2011, the OOR issued a final determination and denied Adams's appeal. The OOR reasoned:

PSP [Police] argues that the withheld records are exempt pursuant to Section 708(b)(2) of the ... [Law].... In order for this exemption to apply, two elements must be satisfied: 1) the record must be maintained by the agency in connection with its law enforcement or other public safety activity; and 2) the release of the record must be 'reasonably likely' to threaten public safety.... The OOR has previously held that PSP satisfied this first element through its law enforcement function....

With respect to the second element of Section 708(b)(2), the Ashmar affidavit states that disclosure of the withheld records would jeopardize the use of confidential informants by making it less likely that confidential informants will come forward. Further, the Ashmar affidavit states that disclosure of the withheld records could endanger the lives of confidential informants and hinder the ability of law enforcement to make arrests. A sworn affidavit may serve as sufficient evidence under the ...

[Law].... Therefore, based on the evidence provided, the OOR finds that the PSP has met the second element of the test. (Citations omitted).

Final Determination, December 1, 2011, at 5.

■ Adams contends that the Police and/or the OOR unilaterally interpreted the Law in such a way as to violate his constitutional rights, including his right to confront witnesses and his right to due process.[3]

Adams asserts that the Police failed to present any evidence that would lead to the conclusion that the release of the requested information was exempt under the public safety exemption of the Law.

Section 708(b)(2) of the Law, 65 P.S. § 67.708(b)(2), provides:

**(b) Exceptions.**—Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

. . . .

(2) A record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.

The Police bear the burden of proving by a preponderance of the evidence that the disclosure of the records "would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity...." 65 P.S. § 67.708(b)(2). A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to "a more likely than not" inquiry. *Jaeger v. Bureau of Workers' Compensation Fee Review Hearing Office (American Casualty of Reading c/o CNA)*, 24 A.3d 1097 (Pa.Cmwlth.2011).

■ Here, the Police presented the affidavit of Captain Ashmar which stated that the information contained in the records would, if made public, assist criminals in their efforts to achieve a criminal objective, would prevent confidential informants from coming forward and would substantially alter the Police's investigative process. Captain Ashmar further opined that disclosure of the records jeopardizes the personal safety of many individuals, hinders the Police's ability to make arrests, prosecutions, and convictions, and creates a threat to public safety.

The OOR based its decision on Captain Ashmar's affidavit. This Court agrees that the affidavit supports the conclusion that the requested records are exempt from disclosure under the public safety exemption. Adams argues that the affidavit is speculative in nature and lacks foundation. This Court does not agree. Captain Ashmar stated in the affidavit that he based his conclusions on his experience as a member of the Police for over twenty years and his extensive experience in investigations of crimes and criminal organizations. The affidavit was the result of this experience, not mere speculation or conjecture.[4]

Accordingly, this Court affirms.

---

**3.** A reviewing court in its appellate jurisdiction independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency. *Bowling v. Office of Open Records*, 990 A.2d 813, 818 (Pa.Cmwlth.2010), *petition for allowance of appeal granted*, 609 Pa. 265, 15 A.3d 427 (2011). In reviewing a final determination of the OOR, a decision of the reviewing court shall contain findings and conclusions based on the evidence as a whole. Section 1301 of the Law, 65 P.S. § 67.1301(a).

**4.** Although this Court is permitted to make its own findings of fact, this Court here makes a

## ORDER

AND NOW, this 31st day of August, 2012, the order of the Office of Open Records in the above-captioned matter is affirmed.

legal determination that Captain Ashmar's affidavit was sufficient to establish that the records were exempt from the Law under the public safety exemption.