IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dwight Bowen,                 :
           Petitioner       :
                      :
       v.                :    No. 964 C.D. 2020
                      :    Submitted: April 9, 2021
Pennsylvania Department   :
of Corrections,          :
           Respondent   :

BEFORE:        HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE LEAVITT                          FILED: August 10, 2021

Dwight Bowen (Requester), *pro se*, petitions for review of a final determination of the Office of Open Records (OOR) that affirmed the Department of Corrections' (Department) denial of his request for records relating to the prison's handling of his mail and three prison investigations. Requester argues that the OOR erred in holding that the requested records were exempt from disclosure under the Right-to-Know Law.[1] He contends that as a criminal defendant, he is entitled to the requested records under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[2] Upon review, we affirm.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] The Due Process Clause of the Fourteenth Amendment to the United States Constitution, in relevant part, provides that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, §1.

On April 20, 2020, while incarcerated at the State Correctional Institution (SCI) at Houtzdale, Requester submitted a written request for records to the Department for

> all emails, memos, reports and electronic communications including other inmates letters, complaints and grievances concerning investigations for DACHRISTA #2019-C43-000000273, SUTOTH #2019-C20-000000078, and RKUSTENBAU #2019-C50-000000046 and all memos, orders or directives ordering the seizing, withholding and tampering with [Requester's] outgoing and incoming mail including dates they were issued.

Certified Record (C.R.), Item 1 at 3. Having received no response, Requester appealed to the OOR on May 14, 2020.[3] The OOR invited both parties to supplement the record. Additionally, the OOR directed the Department to provide a substantive response to Requester.[4]

On June 4, 2020, the Department issued its response to Requester's written request for records, asserting that the requested records were exempt from disclosure under several provisions of the Right-to-Know Law. These included the

---

[3] An agency must respond to a request for records within five business days. Section 901 of the Right-to-Know Law, 65 P.S. §67.901. If more time is needed, the agency's open records officer may unilaterally extend the time to respond if notice is given to the requester and the extension does not exceed 30 days. Section 902(b)(2) of the Right-to-Know Law, 65 P.S. §67.902(b)(2). If more than 30 days is needed, the requester must agree to the extension or the request will be deemed denied. *Id.*

[4] In the interim, on May 29, 2020, the Department submitted a motion to dismiss Requester's appeal as premature, contending that its failure to respond to the written request within five days did not constitute a deemed denial. The Department explained that, in response to the global COVID-19 pandemic, its legal and Right-to-Know offices had been closed for business beginning the week of March 16, 2020, until May 22, 2020. Only once the offices reopened could days justifiably accrue against the Department for purposes of its obligation to issue Right-to-Know Law request responses under Section 901 of the Right-to-Know Law. On July 6, 2020, the OOR denied the Department's motion.

2

personal security exemption,[5] the public safety exemption,[6] the criminal investigation exemption,[7] and the noncriminal investigation exemption.[8] C.R., Item 4 at 3-4.[9] Subsequently, on August 13, 2020, the Department explained its opposition to Requester's appeal and limited its argument to the personal security and public safety exemptions.

The Department explained that disclosure of information used in an internal investigation in a prison places the personal security of anyone involved at risk. It also explained that the requested records in question related to the Department's investigation and that disclosure of these records was reasonably likely to threaten public safety or public protection.

In further support, the Department submitted a sworn declaration from Deputy Kenneth Goodman of the Department's Bureau of Facility Security and Special Operations. Deputy Goodman is an individual intimately familiar with the security operations within all SCIs. Deputy Goodman attested, in part:

> 4.  Investigative function of the [Department] is paramount to the safe and orderly operation of all [SCIs], including SCI Houtzdale.

---

[5] Section 708(b)(1)(ii) of the Right-to-Know Law, 65 P.S. §67.708(b)(1)(ii).

[6] Section 708(b)(2) of the Right-to-Know Law, 65 P.S. §67.708(b)(2).

[7] Section 708(b)(16) of the Right-to-Know Law, 65 P.S. §67.708(b)(16).

[8] Section 708(b)(17) of the Right-to-Know Law, 65 P.S. §67.708(b)(17).

[9] In response, Requester submitted what he described as "an appeal" to the OOR stating that the exemptions did not pertain to him because he was "the defendant in [a] criminal matter" and "the records in question have information needed to effect his defense against these charges." C.R., Item 4 at 2. Additionally, Requester contended that, under the Fourteenth Amendment's Due Process Clause, a greater access to records is allowed in criminal prosecutions. He stated that he was "abandoned by [the] public defender" after his preliminary hearing, and the trial court would not accept his "pro se filings." *Id*.

3

5. The public disclosure of the investigative materials sought by [Requester] is reasonably likely to result in physical harm or otherwise jeopardize the personal security of inmates, staff or others.

6. The dissemination of information ascertained through investigations relating to inmate grievances and the actions and activities that may comprise such an investigation, including but not limited to the surveillance of mail, among other things, will jeopardize prison security by providing insight into how such investigations are carried out. Such information might upset inmates and will allow inmates to retaliate against other inmates or Department employees.

7. Violent attacks are always a real danger in the prison context and violent retaliation may result in disclosure of investigative materials.

8. Inmates or staff that are the object of disclosed information (or those allied with such inmates and staff, by virtue of friendship, familial relationship, intimate relationship or gang membership) may retaliate against individuals that are believed to have contributed to a perceived negative investigative content.

9. The disclosure of the requested records would threaten public safety and the Department's public protection activities in maintaining safe and secure correctional institutions by allowing inmates or others to access information that will interfere with the orderly operation of SCI[-]Houtzdale.

Goodman Declaration at 1-2; C.R., Item 8 at 10-11.

Requester responded that the Department "provided" the Pennsylvania State Police and the Indiana County District Attorney's Office "with documents" and his emails, and the Department gave the State Police his incoming and outgoing mail. C.R., Item 9 at 2. The Department did this without his permission, a subpoena, or a court order. Additionally, Requester stated that the requested records concern incidents of "hazardous waste being thrown" into prison cells numerous times and

4

"the [cell] block" not being "cleaned correctly." C.R., Item 9 at 2. Requester explains that any records regarding these incidents do not "threaten the security of the institution[,]" because "no one was blamed or punished" and his "grievance was denied." *Id*. Further, he also sought records related to an inmate being locked in the shower overnight. Requester contends that there are "no concerns about harm" because that inmate was released in 2019. *Id*. at 4.

On September 1, 2020, the OOR issued a final determination denying Requester's appeal. The OOR explained that

> [t]he Department argues that the disclosure of the responsive records would likely threaten or jeopardize personal security and public safety/protection activities of the Department. 65 P.S. §§67.708(b)(1)(ii)-(2). Section 708(b)(1) of the [Right-to-Know Law] exempts from public disclosure "[a] record the disclosure of which … would be reasonably likely to result in substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. §67.708(b)(1)(ii).

> Similarly, Section 708(b)(2) of the [Right-to-Know Law] exempts from disclosure "[a] record maintained by an agency in connection with … law enforcement or other public safety activity that if disclosed would be reasonably likely to jeopardize or threaten public safety … or public protection activity." 65 P.S. §67.708(b)(2).

OOR Final Determination, 9/1/2020, at 4-5; C.R., Item 10 at 5-6. With respect to the affidavit of Deputy Goodman, the OOR stated:

> Under the [Right-to-Know Law], an affidavit made under the penalty of perjury may serve as sufficient evidentiary support. *See Sherry v. Radnor* [*Township School District*], 20 A.3d 515, 520-21 (Pa. [Cmwlth.] 2011); *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. [Cmwlth.] 2010). In this case, the Department has provided a non-conclusory, detailed explanation as to how the responsive records are "reasonably likely" to

5

threaten or jeopardize personal security and the public safety or protection activities of the Department, by explaining that their disclosure is likely to result in violent retaliation against inmates or staff members. 65 P.S. §§67.708(b)(1)(ii)-(2). Accordingly, the responsive records may be withheld.

OOR Final Determination, 9/1/2020, at 6; C.R., Item 10 at 7. Requester appealed to this Court.

On appeal,[10] Requester argues that he is entitled to the requested records under the Due Process Clause of the Fourteenth Amendment of the United States Constitution because he is a defendant in a criminal case, and the Department has already provided these records to the Indiana County District Attorney's Office. Ancillary Petition for Review at 1.

We begin with a review of the Right-to-Know Law. Generally, records in the possession of an agency are presumed to be public records unless the records are privileged or exempt under Section 708 of the Right-to-Know Law, 65 P.S. §67.708. The agency has the burden of proving that a record is exempt by a preponderance of the evidence. Section 708(a)(1) of the Right-to-Know Law, 65 P.S. §67.708(a)(1). "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Delaware County v. Schaefer ex rel. Philadelphia Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012).

The Department relied upon two exemptions in denying the request—personal security and public safety. First, the personal security exemption protects any record, the disclosure of which "would be reasonably likely to result in substantial and demonstrable risk of physical harm to or the personal security of an

---

[10] Our standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

6

individual." Section 708(b)(1)(ii) of the Right-to-Know Law, 65 P.S. §67.708(b)(1)(ii). "To establish this exception, an agency must show: (1) a 'reasonable likelihood' of (2) 'substantial and demonstrable risk' to an individual's security if the information sought is not protected." *Carey v. Pennsylvania Department of Corrections*, 61 A.3d 367, 373 (Pa. Cmwlth. 2013) (quoting *Governor's Office of Administration v. Purcell*, 35 A.3d 811, 820 (Pa. Cmwlth. 2011)). Substantial and demonstrable risk means "actual or real and apparent" risk. *Carey*, 61 A.3d at 373. "More than mere conjecture is needed." *Id*. (quoting *Purcell*, 35 A.3d at 820).

Second, Section 708(b)(2) of the Right-to-Know Law exempts the disclosure of records "maintained by an agency in connection with … other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity[.]" 65 P.S. § 67.708(b)(2). In order for an agency to establish this exemption, "an agency must show: (1) the record at issue relates to a law enforcement or public safety activity; and[] (2) disclosure of the record would be 'reasonably likely' to threaten public safety or a public protection activity." *Carey*, 61 A.3d at 374-75. When interpreting the term "reasonably likely," courts "look to the likelihood that disclosure would cause the alleged harm, requiring more than speculation." *Id*. at 375.

The agency may satisfy its burden of proof with an affidavit. *Brown v. Pennsylvania Department of State*, 123 A.3d 801, 804 (Pa. Cmwlth. 2015) (quotation omitted) (testimonial affidavits may satisfy an agency's burden of proof of a claimed exemption). The affidavit "must be detailed, nonconclusory, and submitted in good faith." *Id*. (quoting *Office of the Governor v. Scolforo*, 65 A.3d

7

1095, 1103 (Pa. Cmwlth. 2013)).  To determine the adequacy of an affidavit, courts consider whether the affidavit:

> (1) includes detailed information describing the nature of the records sought; (2) connects the nature of the various records to the reasonable likelihood that disclosing them would threaten public safety in the manner described; such that[] (3) disclosure would impair [the agency's] ability to perform its public safety functions [in relation to what the agency claims to be] the alleged threatening consequence.

*Carey*, 61 A.3d at 376.

"[T]he nature of the prison setting requires that personal security and public safety issues be given serious consideration where a [Right-to-Know Law] request seeks records concerning prisons." *Ocasio v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 306 C.D. 2017, filed January 3, 2018), slip op. at 4 (unreported).[11]  "Personal security issues are of particular concern in a prison setting." *Carey*, 61 A.3d at 374.  "Given the heightened risk associated with prisons, representations regarding perceived threats to individual [Department] personnel posed by inmates are persuasive." *Id.*

Here, the Department submitted the affidavit of Deputy Goodman, made under penalty of perjury, to support its assertions that the records sought were not disclosable under the personal security and public safety exemptions of the Right-to-Know Law.  The affidavit describes the nature of the types of records sought and attests that such records are part of the "[i]investigative function" of the Department.  Goodman Declaration at 1, ¶¶3-5; C.R., Item 8 at 10.  The declaration

---

[11] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]"   Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

8

explains that the "[i]nvestigative function" is "paramount to the safe and orderly operation of all [SCIs], including SCI[-]Houtzdale." Goodman Declaration at 1, ¶4; C.R., Item 8 at 10. The declaration attests that disclosure of information ascertained through investigations would jeopardize prison security by providing insight on how investigations are conducted. Goodman Declaration at 1-2, ¶6; C.R., Item 8 at 10-11. Allowing inmates to learn about information acquired through investigations would allow them "to retaliate against other inmates or Department employees." *Id*. Deputy Goodman's declaration also attests that "[v]iolent attacks are always a real danger in the prison context and violent retaliation may result [as a result of] disclosure of investigative materials." Goodman Declaration at 2, ¶7; C.R., Item 8 at 11. Specifically, inmates or staff who are the object of disclosed information may retaliate against individuals that are believed to have contributed to a perceived negative investigative content. Goodman Declaration at 2, ¶8; C.R., Item 8 at 11. Further, the declaration attests that the disclosure of the requested records would allow inmates to interfere with the orderly operation of SCI-Houtzdale. Goodman Declaration at 2, ¶9; C.R., Item 8 at 11.

Viewing the declaration in the light most favorable to the Department, the party prevailing before the OOR, we conclude that it shows a reasonable likelihood of substantial and demonstrable risk of physical harm to inmates and prison staff and shows that the requested records are investigative and public safety records, the disclosure of which would be reasonably likely to impair the security of the Department's prisons. Requester does not contend that the affidavit is speculative in nature or provide any evidence to challenge Deputy Goodman's attestations. Therefore, we conclude that the requested records are protected by the personal security and public safety exemptions. *Adams v. Pennsylvania State Police*,

9

51 A.3d 322 (Pa. Cmwlth. 2012) (records concerning use of confidential informants are exempt from disclosure under the public safety exemption of the Right-to-Know Law where the agency's affidavit showed that disclosure would prevent confidential informants from coming forward and substantially alter police investigations); *Peterson v. Department of Corrections* (Pa. Cmwlth., No. 1786 C.D. 2015, filed July 28, 2016) (unreported) (incident report concerning inmate's fatal assault on his cellmate was exempt from disclosure under the personal security exemption of the Right-to-Know Law where Department declarations showed that disclosure would create a risk of retribution against inmates and staff involved in the investigation).

Requester next asserts that he is entitled to the requested records because he is a defendant in a criminal case[12] and a victim of inmate abuse.[13] However, under "the [Right-to-Know Law], all requesters are on equal footing, without regard to their personal right to the records based on a relationship to the records at issue." *Schneller v. Philadelphia District Attorney* (Pa. Cmwlth., No. 1313 C.D. 2016, filed August 3, 2017), slip op. at 16 (unreported). *See also, e.g.*, *Coulter v. Pennsylvania Board of Probation and Parole*, 48 A.3d 516, 519 (Pa. Cmwlth. 2012) (parolee not entitled to requested records under the Right-to-Know Law even though she was the subject of the records). Thus, the status of the party requesting the records, the reason for the request, and the need for the requested records are irrelevant under the Right-to-Know Law. *Schneller*, slip op. at 16 ("A requester's identity as the subject of the record, or other relationship to the record offers no greater access because such considerations are irrelevant in the statutory

---

[12] Requester states that on September 18, 2020, he was convicted, and on December 17, 2020, he was sentenced to 20 to 40 years. Requester Brief at 6.

[13] In his brief, Requester contends that he "also seeks records where he was the victim of [inmate-on-inmate] abuse." Requester Brief at 3.

10

scheme."); *see also Padgett v. Pennsylvania State Police*, 73 A.3d 644, 647 (Pa. Cmwlth. 2013) ("[A] requester's motivation for making a request is not relevant[.]"). We reject Requester's argument that his status as a criminal defendant or victim entitles him to the records he requested.

Requester next argues that the requested records should have been made available to him under the due process and "discovery clause[s] of the [Fourteenth] Amendment." Requester Brief at 4. We disagree. "Even where a requester [may have] a right to obtain a document outside of the [Right-to-Know Law's] statutory scheme, that is not a valid ground for ordering an agency to provide the record in response to a [Right-to-Know Law] request." *Ocasio*, slip op. at 8. Further, an appeal from an order denying a requester's request for access to a public record pursuant to the Right-to-Know Law is not the proper forum to gain access to evidence for his criminal trial. *Moore v. Allegheny County District Attorney's Office* (Pa. Cmwlth., No. 447 C.D. 2018, filed December 3, 2018), slip op. at 9-10 (unreported). *See also Polite v. Philadelphia District Attorney's Office* (Pa. Cmwlth., No. 548 C.D. 2019, filed September 23, 2019) (unreported).

Finally, Requester argues that the prison operations and security concerns cited in Deputy Goodman's Declaration "have been marginally reduced due to several external factors … that did [not exist] at the time Deputy Goodman made [the] attestation." Requester Brief at 5. Specifically, Requester asserts that he is no longer housed at SCI-Houtzdale and Inmate D'Ambrosa was released from prison in 2019.[14] Requester contends that "[t]his removes the personal security risk for staff and inmates involved." *Id*. However, where an individual resides is not

---

[14] Requester claims that Department staff locked Inmate D'Ambrosa in the shower overnight. Requester Brief at 3. Requester sought records related to this incident. C.R., Item 9 at 4.

relevant under the Right-to-Know Law. The records he requested provide insight as to how the Department conducts investigations within the SCIs, and knowledge obtained from an investigation would allow inmates to retaliate against other inmates or prison staff. As Deputy Goodman attested, "[i]nmates or staff that are the object of disclosed information (*or those allied with such inmates and staff by virtue of friendship, familial relationship, intimate relationship or gang membership*) may retaliate against individuals that are believed to have contributed to a perceived negative investigative content." Goodman Declaration at 2, ¶8; C.R., Item 8 at 11 (emphasis added). Thus, the presence of Requester and Inmate D'Ambrosa at SCI-Houtzdale is irrelevant.

In sum, Requester has not provided this Court with a legal basis upon which to disturb the decision below. Accordingly, we affirm the OOR's final determination denying his request under the Right-to-Know Law.

_____
MARY HANNAH LEAVITT, President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dwight Bowen,              :
         Petitioner        :
                       :
        v.                :    No. 964 C.D. 2020
                       :
Pennsylvania Department    :
of Corrections,            :
         Respondent    :

## **O R D E R**

AND NOW, this 10th day of August, 2021, the final determination of the Office of Open Records dated September 1, 2020, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita