IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of        :
Attorney General,            :
          Petitioner     :
                            :
      v.                  :  No. 600 C.D. 2022
                            :
Michael Mellon,           :
          Respondent   :  Submitted: May 5, 2023

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                          FILED: October 23, 2023

The Pennsylvania Office of the Attorney General (OAG) petitions this Court for review of the May 18, 2022 Final Determination of the OAG's Appeals Officer, which addressed a records request submitted by Michael Mellon, Esq. (Requester) pursuant to the Right-to-Know Law (RTKL).[1] In the Final Determination, the OAG's Appeals Officer affirmed in part and reversed in part an RTKL Officer's decision to withhold a portion of the records requested. Upon review, we affirm.

## I. Background

Requester submitted a request pursuant to the RTKL on February 11, 2022, seeking the following from the OAG:

> In electronic format: all investigation policies and procedures for the [OAG] Bureau of Narcotics Investigation [(BNI)], including but not limited to all policies and procedures that detail the handling of confidential informants, narcotics surveillance investigations, joint

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

jurisdiction investigations, and all police paperwork samples used to create an investigative file.

Reproduced Record (R.R.) at 1a. In a reply dated February 18, 2022, the RTK Officer notified Requester that it was invoking a 30-day extension to respond pursuant to Section 902 of the RTKL, 65 P.S. § 67.902.[2] R.R. at 2a.

On March 21, 2022, the RTKL Officer granted the request in part and denied it in part. *Id.* at 5a. In doing so, the RTKL Officer explained that some of the requested records contained "information regarding the specific investigative techniques and procedures that [BNI] agents use to carry out their duties in the interest of public protection," and were therefore "withheld in their entirety" under Section 708(b)(2) of the RTKL, 65 P.S. § 67.708(b)(2).[3] *Id.* Other records, according to the RTKL Officer, included policies and procedures that "exist only in draft form," and were therefore exempt from disclosure in their entirety under the RTKL's exception for an agency's "predecisional deliberations," 65 P.S. § 67.708(b)(10)(i)(A).[4] *Id.* at 5a. The RTKL Officer explained that all non-exempt

---

[2] Under certain circumstances, Section 902 permits an agency to extend its five-day response time to a right-to-know request by 30 days, with written notice to the requester. 65 P.S. § 67.902.

[3] Section 708(b)(2) of the RTKL, commonly known as the public safety exception, exempts from access:

> A record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.

65 P.S. § 67.708(b)(2).

[4] Section 708(b)(10)(i)(A) of the RTKL exempts from access:

**(Footnote continued on next page…)**

2

records requested would be provided after the payment of applicable fees. *Id.* at 6a. The response did not specify the total amount of records responsive to the request, or how many records were to be withheld.

Unsatisfied with this result, Requester elected to challenge the RTK Officer's decision by filing an appeal with the OAG's Appeals Officer on April 5, 2022. *Id.* at 8a. While acknowledging that "any draft policies that may currently exist were properly omitted from the response," Requester argued that "the blanket denial to the request for any substantive policies and procedures based on the public safety exception, 65 P.S. § 67.708(b)(2)[,] was incorrect." *Id.* Such information, Requester argued, "does not reveal any secrets or tactics regarding a narcotics surveillance or any other type of investigation[,]" and noted that the Philadelphia Police Department makes similar records available online in unredacted form. *Id.* at 21a, 23a. Requester further argued that public access to such information is vitally important, as it reveals to the public that the law enforcement agency "is directing its officers to follow the current law or not . . . and [to] follow their own internal procedures." *Id.*

The RTKL Officer responded in opposition to Requester's appeal via a letter brief on May 6, 2022. Therein, the RTKL Officer maintained that release of the withheld records "would essentially provide the criminal element with a 'how-to'

---

The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A).

manual for the processes and procedures agents utilize to carry out their legislatively mandated mission to enforce the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act[5] and conduct comprehensive and covert investigations into major drug trafficking networks and organizations." *Id.* at 30a. The RTKL Officer disputed that the records withheld were comparable to the Philadelphia Police Department records discussed by Requester, explaining that OAG's Criminal Law Division "has a more targeted investigative approach," often involving "comprehensive and largely covert investigations into the illegal, clandestine activities of drug traffickers throughout the Commonwealth." *Id.* at 27a. Included for the OAG's Appeals Officer's *in camera* review was a copy of the records withheld, which were 560 pages in length, along with a privilege log that briefly stated the basis for withholding them. *Id.* at 33a-39a.

In addition, the RTK Officer submitted an unsworn affidavit by Mark A. Serge, Esq., Chief Deputy Attorney General (CDAG) of the OAG's Drug Strike Force Section. *Id.* at 58a. The CDAG explained that the exempt records fell into three categories, which he identified by the numbers that the OAG assigns to its internal directives. *Id.* at 62a. They are as follows:

- Directives 400 through 415 set forth the "internal process and procedures" used by OAG agents and technical services personnel while using "the various tools of electronic surveillance," such as pen registers, trap and trace devices, and devices used to conduct both consensual and non-consensual interceptions of communication. *Id.* The CDAG opined that dissemination of these directives "would provide the criminal element and targets of an investigation with a

---

[5] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 – 780-144.

knowledge of those tools and equipment . . . and would allow them to defeat the use of these tools," thereby endangering law enforcement officers and the general public. *Id.* at 62-63a.

• Directives 505, 506, 510, 51 l, 512, 513, 516, 519, 524, 527, 528, 529, 53l, and 532 set forth the operations of OAG agents who conduct undercover investigations of drug trafficking as well as other criminal activity. *Id.* at 63a. The CDAG called particular attention to Directive 512, which governs "informant procedures," and Directive 519, which sets forth the procedure for so-called reverse-undercover operations. *Id.* If such details are made publicly available, the CDAG argued, it would enable investigation targets to know "what to look for" when agents conduct covert operations, including how money is handled and what fictitious information is used. *Id.* at 64a-65a. Other 500-level directives set forth instructions regarding the amount of money used in investigations, how such money is to be handled and transported, the construction of evidence rooms, the level of security used therein, and the conditions under which money, drugs, and other evidence is handled and stored. *Id.* at 65a. According to the CDAG, the release of such information to the public would permit drug offenders and other criminals to "use this knowledge to their advantage in targeting agents and/or offices where evidence and/or money is held," thus placing agents, OAG personnel, and the general public in danger. *Id.* at 65a. The CDAG added that evidence rooms and other OAG facilities have already been the target of multiple break-ins by criminals, some of which resulted in the successful theft of evidence. *Id.*

5

- Directives 800 through 805 govern the OAG's use-of-force policies. *Id.* at 63a. According to the CDAG, the dissemination of such policies would "allow the criminal element to be better prepared to offset the use of force" and "to neutralize and/or outgun BNI agents as [they] carry out their duties." *Id.* at 66a. The CDAG provides the example of Directive 801, which "specifically sets forth the types of firearms and ammunition that are authorized to be used by agents." *Id.*

In the CDAG's view, releasing the foregoing 36 directives to Requester would have "an adverse effect on [OAG] agents' ability to protect themselves," their law enforcement partners, individuals cooperating with law enforcement, and the public generally. *Id.*

The OAG's Appeals Officer subsequently issued her Final Determination on May 18, 2022,[6] thereby granting Requester's appeal in part and denying it in part. *Id.* at 72a. The OAG's Appeals Officer agreed with the OAG that "portions of the responsive records that do identify specific equipment, locations, timing or techniques should be withheld in part under the public safety exemption." *Id.* However, her *in camera* review of the responsive documents led the OAG's Appeals Officer to conclude that "many directives [could] be released with redactions to protect specific information that is reasonably likely to harm or threaten the OAG agents' public safety activities." *Id.* at 71a. Accordingly, the OAG's Appeals Officer compiled a list of specific redactions to be made, which would exempt from release approximately 56 pages of materials. *Id.* "[A]ll other remaining sections

---

[6] To allow for *in camera* review, Requester agreed to additional time for the Final Determination's issuance pursuant to Section 1101(b)(1) of the RTKL, 65 P.S. § 67.1101(b)(1) (providing that an appeal's officer final determination shall be mailed to the requester and the Office of Open Records within 30 days of the receipt of the appeal, unless the requester agrees otherwise). R.R. at 69a.

and attachments" of the 36 directives were to be released to Requester. *Id.* In response, the OAG appealed the Final Determination to this Court.[7]

## II. Issues

On appeal, the OAG argues that it "has demonstrated by a preponderance of the evidence that the disclosure of the requested documents [would] pose a threat to public safety," and that the OAG is thereby permitted to withhold the records from release under the RTKL's public safety exception. Accordingly, the OAG asks this Court to reverse the OAG's Appeals Officer's Final Determination and to reinstate the previous ruling by the RTKL Officer.

## III. Discussion

Section 708(b)(2) of the RTKL, commonly known as the public safety exception, exempts records from public access that are "maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity . . . " 65 P.S. § 67.708(b)(2). In order for an agency to withhold a record under the public safety exception, the agency must show, by a preponderance of the evidence, that (i) the record at issue relates to a law enforcement or public safety activity; and (ii) "disclosure of the record would be 'reasonably likely' to threaten public safety or a public protection activity." *Allegheny Cnty. Dist. Att'y's Off. v. Wereschagin*, 257 A.3d 1280, 1294 (Pa. Cmwlth. 2021). When an agency opposing disclosure offers an affidavit, we consider whether the affidavit (i) includes detailed information describing the nature of the records sought and (ii) connects the nature

---

[7] "This Court exercises a *de novo* review of appeals officers' decisions [under the RTKL] pertaining to Commonwealth agencies." *Meguerian v. Off. of the Att'y Gen.*, 86 A.3d 924, 927 n.4 (Pa. Cmwlth. 2013).

of the various records to the reasonable likelihood that disclosing them would threaten public safety in the manner described, such that (iii) disclosure would impair the agency's ability to perform its public safety functions. *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 376 (Pa. Cmwlth. 2013). "In interpreting the 'reasonably likely' part of the test, as with all the security-related exceptions, we look to the likelihood that disclosure would cause the alleged harm, requiring more than speculation." *Id.* at 375.

The question of whether a record or document is exempt from disclosure is a factual one. *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 476 (Pa. 2013). Under the RTKL, this Court serves as the ultimate finder of fact and is to conduct a full, *de novo* review of an appeal from a decision by a RTKL appeals officer. *Id.* at 474. However, the RTKL also permits this Court to adopt the factual findings and legal conclusions of an appeals officer when appropriate. *Id.*

On appeal to this Court, the OAG maintains that disclosure of the aforementioned documents "would implicate public safety," as confirmed by the CDAG's affidavit. OAG's Br. at 18. The OAG maintains that the affidavit "contains the necessary facts to support the OAG's position pursuant to the legal standard set forth by this Court." *Id.* at 18-19. Furthermore, OAG argues, where the author of an affidavit bases his or her conclusions on "extensive criminal law enforcement experience, this should ordinarily be sufficient to support the agency's burden of proof." *Id.* at 18 (citing *Adams v. Pa. State Police*, 51 A.3d 322, 325 (Pa. Cmwlth. 2012)). Accordingly, the OAG concludes that the 36 directives in question should remain withheld in their entirety. *Id.* at 19.

Based on our *in camera* review of the 560 pages[8] of documents in question, we conclude that they must be released in accordance with the OAG's Appeals Officer's instructions. The 36 directives that the RTKL Officer withheld in their entirety contain statements of general purpose, policy objectives, general discussions of law enforcement practices with which the public is already familiar, and other information that does not fall under any RTKL exception. In stark contrast to the RTKL Officer's overbroad approach, the redactions set forth in the OAG's Appeals Officer's Final Determination precisely identify information exempt from release under the public safety exception while carefully preserving the public's right to access any materials that are not exempt.[9]

In its Brief to this Court, the OAG fails to provide any reason why the public safety exception applies to those portions of the records ordered released by the OAG's Appeals Officer. Indeed, the OAG's arguments omit any discussion of the OAG's Appeals Officer's careful redactions and appear to address only the dangers of releasing all 36 directives in unredacted form. The CDAG's affidavit, on which

---

[8] After the OAG's Appeals Officer issued her Final Determination, the OAG discovered that a redacted copy of Directive 527, which comprises 30 pages of the records in question, was previously released to another RTKL requester. OAG's Brief at 9 n.6. Thus, the OAG has released that document in its previously redacted form. *See id.*, Exhibit 1. As the redactions in the released version are considerably more extensive than the redactions ordered in the Final Determination, however, Directive 527 still forms a part of this Court's *in camera* examination.

[9] For example, Directive 800 is the first in a series of directives that discuss the OAG's use-of-force policy. The CDAG argues that, if released, the 800-level directives would "allow the criminal element to be better prepared to offset the use of force" and "to neutralize and/or outgun BNI agents as [they] carry out their duties." R.R. at 66a. However, Directive 800 contains several pages of general information, such as definitions of widely known terms and a discussion of why the use of force is sometimes necessary. The OAG's Appeals Officer ruled that such information could be released to the public, while a passage providing specific instructions to agents is redacted. As discussed above, the OAG fails to explain why the OAG's Appeals Officer's redaction is insufficiently tailored to protect information exempt from release under the public safety exception.

the OAG relies exclusively for its factual assertions, was written before this case even reached the OAG's Appeals Officer; consequently, the affidavit, too, fails to take into account the specific redactions outlined in the Final Determination.

The OAG is correct that an affidavit based on "extensive experience in investigations of crimes and criminal organizations" can meet an agency's burden of proof. *Adams*, 51 A.3d at 325. In this case, however extensive the CDAG's law enforcement experience may be, his averments fail to connect the records ordered released by the OAG's Appeals Officer "to the reasonable likelihood that disclosing them would threaten public safety." *Carey*, 61 A.3d at 376. Consequently, the OAG has failed to establish by a preponderance of evidence that the public safety exception applies to those portions of the records ordered released by the OAG's Appeals Officer.

## IV. Conclusion

For the foregoing reasons, we affirm the OAG's Appeals Officer's Final Determination.

_____
ELLEN CEISLER, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of          :
Attorney General,             :
             Petitioner      :
                                  :
         v.                  :   No. 600 C.D. 2022
                                  :
Michael Mellon,             :
             Respondent    :

## O R D E R

AND NOW, this 23rd day of October, 2023, the order of the Pennsylvania Office of Attorney General's Appeals Officer in the above-captioned matter, dated May 18, 2022, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge